No. 43.—Marcus A. Franklin *et al.* plaintiffs in error, *vs.* The Mayor and Council of the City of Macon, defendants.

[1.] Greater latitude ought to be allowed in our Courts. for the introduction of testimony ; and all frivolous and captious objections, should be discountenanced.

[2.] It is not sufficient to exclude the testimony of a witness, who swears that " the impression resting on his mind, was so and so," as every witness must swear according to the impressions on his mind, which are the materials of his knowledge, and this is only a more cautious mode of expressing himself.

In Equity, in Bibb Superior Court. Tried before Judge Starke.   May Term, 1852.

This was a case very similar to the preceding, being a bill to restrain the City Council from selling another lot, alleged to be public property, under the same state of facts, as in the former case.    Among other testimony, the complainant introduced the answers of Isaac B. Rowland, who stated that he had been several times a member of Council, though he could not recollect exactly the years ; that he knew the lot in dispute, and that " the impression resting on his mind was, that it was to remain

a perpetual reservation; or such was, as he conceived, the implied understanding, at the time of lease of some of the surrounding grounds." Objection being made to this answer, it was rejected by the Court.

The answers of Jerry Cowles were likewise offered by complainant, who stated, that when witness was a member of Council, the subject of this lot was brought up. Witness had bought lots in the vicinity, and wished to buy this, if it was to be sold; that every member gave his opinion, and the Board was unanimous, that this lot was to be kept for the public; that the Council, so far as witness knows or believes, have always so considered, and that it has been so used, ever since the sale of lots, in 1834 or 1835, to witness, and that he so understood when he purchased lots.

In another answer, the witness stated that he applied to the Council to buy all the land that they were then offering for sale, in that part of the city; that a committee of citizens was appointed to appraise all that they would sell; and that witness' application, in writing, covered all the ground they would sell, as the balance was to be kept for streets and a public square, forever."

These answers being objected to, were ruled out by the Court.

The Jury found for defendant; whereupon complainant excepted to the several decisions of the Court herein stated.

C. B. COLE, for plaintiffs in error.

POE, NISBET & POE, and WHITTLE, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

This bill is filed by Marcus A. Franklin, in behalf of himself and others, to restrain the Mayor and Aldermen of the City of Macon, from selling a small lot of ground in the rear of the residence of the complainant, Franklin, and contiguous to his

property, for the reason that the same had been dedicated many years previously by the city authorities, as an open square for the public use.

[1.] Amongst other testimony, the depositions of Isaac B. Rowland and Jerry Cowles, were offered in evidence, to prove the dedication. The former testified that he was an inhabitant of Macon from 1827 to 1847; and that during that period, he was several times a member of the City Council, although he could not now recollect what or how many years; that he knew the piece of ground in dispute, and *that the impression resting upon his mind was,* that it was to remain a perpetual reservation; and such, as witness conceived, was the implied understanding, at the time of the lease of some of the surrounding lots; that it was while he was a member of the Council, that the impression was made upon his mind, and that the reservation was to be perpetual, and for the public use; and in consideration of some surrounding purchases of land, made from the city by individuals, that so much time had elapsed that he (witness) could not be more particular, and only knew that the ground thus dedicated had remained open to the public for many years since, and was, as he had supposed, a perpetual dedication to the public. He was not present at the sale of the adjoining lots, and could not say what passed at that time.

Jerry Cowles swears that he was a resident of the City of Macon for twenty years, viz: from 1829 to 1849; that he knew the open square of ground in question. While witness was Alderman of the City of Macon, and Chairman of the Committee on Public Property, laying out the streets of Macon and acting Mayor of the City, during the absence of Capt. Seymour, the subject was talked over in Council by every member and by the City Surveyor, Mr. Ellis. Witness owned the land on both sides, and offered to buy this piece of ground, if it was to be sold to anybody, and the unanimous opinion was, that it would not be sold; that it was to be kept open for a public square, inasmuch as, after leaving two streets, one between Henry G. Lamar and Charles Day's property, and the other between Charles Day's property and the house formerly occupied by

Curtis Lewis, there would not be land enough left for any object. Therefore, it was thought best to convert it into a public square. It was the understandiug, when witness bought his land of the corporation, that they would not sell any more, but that the same should be kept open for the purposes aforesaid. The City Council have always so considered it, so far as witness knows or believes. It has been so used ever since the sale made to witness in 1834 or 1835.

Witness thinks the City of Macon appointed Ossian Gregory, James Rea and Nathan C. Monroe, to appraise the property sold within the corporation. Witness desired, at the time he purchased, to buy all the land, to which the members of Council objected. He applied for all, that upon consultation, it was agreed should be sold, and the above-named gentlemen (neither of them in the Council,) were appointed a committee to appraise all the property they would sell, and witness' petition *in writing*, covered all the ground they would consent to sell, as the balance was to be kept for streets and a public square, forever.

This testimony was ruled out by the Court, as inadmissible to establish a dedication of the piece of ground in controversy to the public use.

We are not called upon to say whether or not, the testimony, if allowed, would have been sufficient to prove that this lot was dedicated as a public square. The question is—would it *tend* to that object? to demonstrate that issue? We are clear that it would, and that it should have been received.

[2.] It is argued that the testimony of Rowland was inadmissible; as the mere *impressions* of a witness, ought never to be received in evidence; that they are too uncertain to establish the truth of a fact, and that if admitted, it might lead to dangerous consequences; that witnesses ought to testify according to their knowledge and not according to their belief or impressions; that they may have impressions on their mind not produced by the facts which they are called to prove, but derived from other sources than their own imaginations.

We do not think that this objection has much weight. Every

witness must swear according to the impressions on his mind. They are the materials of his knowledge. It is usually only a more cautious mode of expressing their belief. They mean to state the substance of what they heard and recollect, and not the exact words. The impressions of Mr. Rowland were made from the consultations of the Council Chamber, and we think were sufficiently certain and positive as to be admissible.

I have long been satisfied that we are too hide-bound and restricted in our practice, with regard to the admissibility of evidence. The books of *Reports* will show that there is no State in the Union, and no country in the world, where there are as many captious objections made to testimony. It is high time that the practice should be discouraged.

In proof of the foregoing assertion, look to the cases in 6 *Peters*, 431. 8 *Wendell*, 85. 12 *Wheaton*, 582. 20 *Wendell*, 111, *et passim*, where the dedication of land to public purposes was the issue, and we will see at a glance what latitude is allowed, in the introduction of testimony. Nothing tends more to embarrass a trial, civil or criminal, than the frequent and frivolous objections that are so commonly and capriciously made to the introduction of the proof.