### MARSHALL et al. v. PIERCE.

1. If the grantee in a security deed goes into possession of the land thereby conveyed under no other claim than such a deed, he is in possession simply for the purpose of applying the rents, issues, and profits to the satisfaction of his debt; and when the net amount received by him from the proceeds of the land is equal to or greater than the amount of his debt, his right of possession ceases, and the grantor, or his legal representatives, and, if none, his heirs may bring an action to recover the land.
2. In a suit to recover land and cancel the deeds of the defendant as clouds on the plaintiff's title, the plaintiff, if entitled to recover the land, may also recover the rents, issues, and profits while possession of the land was wrongfully withheld by the defendant.
3. A witness will be allowed to testify to his "impression" if derived from recollection; but if it be merely his belief founded on hearsay, or his own deduction or inference from the facts, the testimony is incompetent.

4. In an action by the holder of an equity against a purchaser for value from the former's grantee, upon proof of purchase and payment, and in the absence of circumstances sufficient to put the purchaser on notice of the plaintiff's equity, the burden is on the plaintiff to show actual or imputable notice of his equity to the purchaser at the time of his purchase. The mere fact that the purchaser took a quitclaim deed is insufficient of itself to negative the purchaser's good faith, so as to cast upon him the burden of establishing the fact that he bought without notice of the plaintiff's equity.

(a) In view of the indefiniteness of the evidence relating to the time and manner of acquiring possession by the grantee of an absolute deed, no ruling is made as to the applicability of section 3258 of the Civil Code (1910), inhibitive of parol proof (except in cases of fraud) to show an absolute deed to be a mortgage as between the parties.

JULY 12, 1911.

Equitable petition. Before Judge Gilbert. Taylor superior court. June 28, 1910.

*Hardeman, Jones, Callaway & Johnston* and *C. B. Marshall,* for plaintiffs in error.

*Jere M. Moore, W. E. Steed,* and *J. E. Pottle,* contra.

EVANS, P. J. E. C. Pierce and his nine children brought suit against the executors of T. J. Marshall, Gorman and Huggins, and the Middle Georgia Land and Lumber Company, to recover a certain tract of land and to cancel certain deeds as a cloud upon their title. On demurrer it was held that the plaintiffs' petition set forth a cause of action. *Pierce* v. *Middle Georgia Land and Lumber Company,* 131 *Ga.* 99 (61 S. E. 114). In substance the plaintiffs, suing as heirs at law of Mrs. Pierce, alleged, as a basis of recovery, that Mrs. Pierce, being a married woman, conveyed the premises in dispute to T. J. Marshall; that the consideration of the conveyance was to secure the debt of the grantor's husband; that the debt was infected with usury, and had since been paid; that Marshall conveyed the land by quitclaim deed to Gorman and Huggins, who, at the time of their alleged purchase, had notice of the facts and circumstances under which Marshall acquired title. Upon the remand of the case for trial certain amendments were submitted, and demurrers filed to the petition as amended. Some of the demurrers were sustained and some were overruled, and the case proceeded to trial, resulting in a verdict for the plaintiffs. The court refused to set aside the verdict on motion, and the defendants excepted.

1. When the case was considered on demurrer it was held that

the allegations of the original petition respecting the payment of the debts alleged to have been the consideration of the deeds from Mrs. Pierce to Marshall were defective, by reason of a failure to allege the time of payment or to give sufficient reasons for the pleader's inability to give the exact dates of payment. An amendment was allowed wherein it was alleged, that one J. A. Steed, as the agent of T. J. Marshall, had collected the rents from the land during the years from 1890 to 1903, inclusive, and had paid the same to Marshall during these years as credits upon the debt, and that the rents so received were sufficient in amount to fully discharge the debt, but that petitioners were unable, from lack of information, to give the exact dates and amounts of the various payments; that J. A. Steed kept no record of his payments, and petitioners were unable to allege more accurately the time of Marshall's receiving the payments. Though these allegations may not measure up to the requirements of a technical plea of payment, yet they are sufficient as alleging, in connection with other parts of the petition, that the alleged creditor, while in possession of the land, through his agent collected the rents for the specific years, which were sufficient to discharge the debt. "If the grantee in a security deed goes into possession of the land thereby conveyed under no other claim than such a debt, he is in possession simply for the purpose of applying the rents, issues, and profits to the satisfaction of his debt; and when the net amount received by him from the proceeds of the land is equal to or greater than the amount of his debt, his right of possession ceases, and the grantor, or his legal representatives, and, if none, his heirs may bring an action to recover the land." *Gunter* v. *Smith,* 113 *Ga.* 18 (38 S. E. 374).

2. An amendment to the petition was allowed, wherein the plaintiffs alleged that the defendants had cut from the land 700,-000 feet of lumber of the value of $3,500, had gathered and sold turpentine extracted from the trees of the value of $1,000, and had received $3,000 from the use of the water power and water privileges on the land; and judgment was prayed for these sums. These allegations were attacked by demurrer, because it was alleged that in the doing of the acts complained of the defendants were trespassers and the subject-matter of the recovery was damages, and an improper standard of measuring damages was averred. We do not deem it necessary to set out in extenso these allegations.

Their tenor was to charge the defendants with having received certain issues and profits in the land, and the allegations were germane to the original cause of action, which was to recover the land and cancel the defendants' deeds as clouds on the plaintiffs' title. If the plaintiffs are entitled to recover the land, they are likewise entitled to recover the rents, issues, and profits.

3. The following evidence was allowed over the defendants' objection: "It [the deed] was given to secure money borrowed. I knew from the conversation that passed there that that deed was given to secure money; that was the object; it wasn't a sale. I wouldn't undertake to say now definitely that Mr. Marshall said this is a security deed, but I knew it was. I knew it from the conversation that passed. I don't recollect what the conversation was, but I knew very well it was a security deed. All I undertake to testify is that the impression left on my mind from what was said was that it was a security deed. I couldn't undertake to tell the jury anything that Mr. Marshall said, or Mrs. Pierce said, or Mr. Pierce said. I don't know as I can recollect anything that was said about it; but when I was called in to witness it I knew it was a se-curity deed. The only way I know it was a security deed is by what I heard, and I can't tell you what I heard, because I don't recollect. . . I couldn't recollect that Mr. Marshall said that it was a security deed. I don't recollect any conversation hardly that took place at all. I didn't read it." This testimony was offered in support of the allegation that the deed from Mrs. Pierce to Marshall was a deed to secure a debt, and its rejection was moved on the ground that it was but an expression of a conclusion of the witness. A witness who is unable to recollect the exact words of a conversation will be permitted to relate their substance. If in doing so he says that his impression is as he purposes to narrate, the testimony is not necessarily objectionable on the ground that the witness's impression is but an inference from the facts. The rule is that the impression of a witness, if derived from recollection, is competent. *Franklin* v. *City of Macon,* 12 *Ga.* 257; *Moody* v. *Davis,* 10 *Ga.* 403. But if it be merely his belief founded upon hearsay, or his own deduction or inference from the facts, it is incompetent. *Peterson* v. *State,* 47 *Ga.* 524. The witness in the present case was the clerk of the superior court, and in his official capacity was called upon to at-test the deed from Mrs. Pierce to Mr. Marshall. There was a con-

versation between the parties in the presence of the witness as to the character of the transaction. The occurrence was many years ago, and the witness candidly confesses his inability to recall the words of the parties. But there is one thing he does remember about the transaction, and that is, the deed which Mrs. Pierce executed to Mr. Marshall was given to secure a debt. We think the witness's statement that it was his impression that the transaction was of that character was a cautious mode of expressing his recollection of what the parties themselves pronounced that transaction to be, rather than his own deduction as to its nature. In *Franklin v. City of Macon,* supra, a bill was filed to restrain the municipality from selling a certain lot of land in the city, which was alleged to have been perpetually set apart and dedicated to the use of the public when the lots in that part of the city were originally surveyed and sold. The plaintiff introduced a witness who stated, that he had been several times a member of council, though he could not recall the exact years, that he knew of the lot in dispute, and that "the impression resting on his mind was that it was to remain a perpetual reservation, or such was, as he conceived, the implied understanding at the time of the lease of some of the surrounding grounds." In holding that the testimony was competent the court said: "Every witness must swear according to the impressions on his mind. They are the materials of his knowledge. It is usually only a more cautious mode of expressing their belief. They mean to state the substance of what they hear and recollect, and not the exact words. The impressions of Mr. Roland were made from the consultations of the council chamber, and we think were sufficiently certain and positive as to be admissible."

4. The court charged: "Where the defendants rely upon a quitclaim deed as title, the presumption of good faith applicable to a warranty title does not arise, but the presumption is that they knew they were getting only what they actually got; and it is, under such circumstances, incumbent upon the defendants to show by proof that they bought in good faith, believing that they were getting a good title." Did this charge correctly present the rule respecting the burden of proof in a suit by the holders of a prior equity to recover land from a purchaser from their grantee. In such cases the burden is on the purchaser to show that he is a purchaser for value; and when this is made to appear, and no circum-

stances are developed tending to put him on notice of the plaintiffs' equity, the burden is shifted to the plaintiffs to bring home notice of their equity to the purchaser. *Williams* v. *Smith,* 128 *Ga.* 306 (57 S. E. 801). In the instant case the plaintiffs made no charge in their petition that the expressed consideration of the quitclaim deed from Mr. Marshall to Gorman and Huggins was an under-valuation of the land. Mr. Gorman testified that he paid $600 for the land, which was more than its full value, and that he was influenced to pay this amount because of consequential benefits which would accrue to his other property from the ownership of this land. One of the plaintiffs testified that the timber on the land at the time of Gorman and Huggins' purchase was worth between $800 and $1,000, but he gave no estimate of the value of the land. The essential point was whether Gorman and Huggins were purchasers without notice. The court in his instruction made that largely turn upon the effect of taking a quitclaim deed. While the jury were instructed that the taking of a quitclaim title did not necessarily negative good faith, they were also instructed that it put the burden upon the defendants to sustain their contention that they purchased in good faith without notice of the plaintiffs' equity. We think this was stating the rule too strongly against the defendants. It has been held that the receipt of a quitclaim deed does not of itself prevent the party from becoming a bona fide purchaser. Moelle v. Sherwood, 148 U. S. 21. And that a quitclaim does not of itself negative the presumption of good faith in one who holds under it. *Hammond* v. *Crosby,* 68 *Ga.* 767. An instruction to the effect that the taking of a quitclaim deed put the burden upon the defendant to prove that he was ignorant of the plaintiff's equity reverses the rule. The code declares that a bona fide purchaser for value and without notice of an equity will not be interfered with by a court of equity. Civil Code (1910), § 4531. The plaintiffs are in a court of equity, asserting that though the apparent legal title is in Gorman and Huggins, yet at the time they acquired such title they had notice of their equity. The mere fact of taking a quitclaim title was not sufficient to change the rule respecting the burden of proof, and the court's contrary instruction was harmful error to the plaintiff.

The deed from Mrs. Pierce to Mr. Marshall was absolute in form. The evidence does not show with clearness how Mr. Marshall

got possession of the land or the time when he entered into posses-sion. Hence, we do not feel called upon, in the present state of the record, to decide the applicability of Civil Code (1910), § 3258, providing that a deed absolute on its face and accompanied by possession shall not be proved at the instance of the parties, by parol evidence, to be a mortgage only, unless fraud in its procurement is the issue to be tried. .

*Judgment reversed. All the Justices concur.*