26871, 26889.   BURNETT *v.* LOUISVILLE & NASHVILLE RAILROAD COMPANY; and *vice versa.*

DECIDED JUNE 9, 1938.

` *John S. Wood, J. H. Paschall, Roscoe Pickett,* for plaintiff.

*Tye, Thomson & Tye, J. G. B. Erwin, Charles W. Allen,* for defendant.

FELTON, J.  Herbert Burnett brought a suit for personal injuries against the Louisville and Nashville Railroad Company, in which he made substantially the following allegations: About one hundred yards south of the depot of the defendant in Fairmount its main line of track and adjacent side-track cross a frequently traveled public highway at grade. The approach of said highway to the crossing from the west for approximately a quarter of a mile is down a steep decline to within about twenty feet of defendant's line of track; whereupon the highway abruptly changes to an incline and mounts a fill about five feet higher than the lowest portion of the highway and then crosses the defendant's track. On a certain unusually and extremely dark night the defendant placed

upon the side-track over said crossing a train of freight-cars coupled together, completely blocking said crossing. About twenty minutes after the cars were thus placed, the plaintiff approached the crossing in an automobile from the west. Without the aid of lights, objects such as a freight-car of such dark color as the one over the crossing were indistinguishable to the human eye for a distance of more than ten or fifteen feet. At the time of the plaintiff's approach to said crossing the lights of his automobile were in perfect condition, were burning, and were casting a strong light for more than one hundred feet in advance of the automobile, but because of the steep down-grade of the highway to within twenty feet of the tracks, and the steep incline to the tracks, the lights of the automobile did not illuminate or make visible to the plaintiff the train standing on the crossing until his automobile approached and passed the lowest portion of the highway, about twenty feet west of defendant's track, and started upward onto said track, and plaintiff did not see and in the exercise of ordinary care could not have seen the cars until his automobile was within less than twenty feet of the crossing. He was traveling approximately twenty miles per hour, and when he first discovered the presence of said train across the track he immediately applied his brakes, and as quickly as possible put the gear of his car in reverse, and did everything possible to bring his automobile to a stop before colliding with the cars; but, despite his efforts to avoid a collision, he collided with the train, to his injury and damage, etc. The petition contained the following specifications of negligence: (1) In failing to have and maintain a light or lights or signaling device at or adjacent to the tracks or near the crossing, capable of warning persons approaching. (2) In blocking the crossing. (3) In permitting the cars to block the crossing for a period of longer than ten minutes, in violation of an ordinance of the City of Fairmount. (4) In failing to station any person at or near the crossing to warn persons approaching of the presence of the cars. (5) In failing to keep and maintain said crossing in an unobstructed manner. (6) In maintaining a public crossing under the circumstances set forth, without providing the cars with any light or guard, bell or device, to warn travelers along said highway of the presence of box-cars; etc. The defendant's general demurrer to the petition was overruled, to which ruling exceptions pendente lite

were taken on which error is assigned in a cross-bill of exceptions. On the trial the judge withdrew the case from the jury and directed a verdict for the defendant. The plaintiff's motion for new trial was overruled, and he excepted.

We think the judge properly·withdrew the case from the jury and directed the verdict. While ordinarily the question whether a plaintiff is barred from a recovery by his own negligence is for the jury, this is one of those cases where such a conclusion should be reached as a matter of law. Without deciding whether the blocking of the crossing for longer than the time provided by the municipal ordinance could or could not have figured in the case if the allegation had been proved, the evidence failed to show that the ordinance had been violated. The evidence showed that the plaintiff was familiar with the crossing, though he stated that he did not know about the incline, "because he had not traveled the road at night." There was no evidence that it was misty or rainy, or why view was obstructed or made difficult, except the incline up the tracks. Irrespectively of whether the railroad was negligent in failing to provide any or all of the safeguards as contended by the plaintiff, the uncontradicted evidence, including photographs of the scene showing the crossing, incline, dip in the road, etc., shows that the plaintiff could easily have seen the cars on the tracks, if his automobile lights had been burning properly (and he swore they were), in ample time for him to have stopped his car which he swore was running between twenty and twenty-five miles per hour. The evidence shows that the road ran at right angles to the railroad-tracks. From a point 120 feet west of the track eastward to the track there is a rise of 4.8 feet, or 4 feet, 9.5 inches. From a point 125 feet west of the track the road rises gradually toward the west about two feet to a point about 360 feet from the track. It is obvious that the plaintiff could and should have seen the cars, not only before he went down the incline toward the dip in the road, but also after he reached the dip and proceeded toward the tracks. He could have seen the cars after he started up the incline, and could easily have stopped his car long before he collided with the freight-car. The night was dark, which rendered the cars more susceptible to vision and light reflection than would otherwise have been true. This case is distinguishable from *Mann* v. *Central of Georgia Ry. Co.*, 43 *Ga. App.*

708 (160 S. E. 131) and *Rape* v. *Tennessee, Alabama & Georgia Ry. Co.,* 47 *Ga. App.* 96 (169 S. E. 764). Those cases were decided on demurrer. In those cases, as in this one, it can not be ascertained from the petitions whether the drivers of the cars could have seen the trains before it was too late to stop. The evidence in this case, however, shows that the driver could have seen the train in time to stop. In *Shelley* v. *Pollard,* 55 *Ga. App.* 88 (189 S. E. 570), it was alleged that there was a fine mist of rain which affected the visibility of the obstruction. The case of *Central of Georgia Ry. Co.* v. *Heard,* 36 *Ga. App.* 332 (136 S. E. 533), is distinguishable in that it was there alleged that the night was intensely dark, misty, and foggy, and further that there was no gate or watchmen, one of which was required by municipal ordinance. In the case of *Gay* v. *Smith,* 51 *Ga. App.* 615 (181 S. E. 129), it was alleged that the morning was dark and foggy. This case is controlled by *Rape* v. *Tennessee, Alabama & Georgia Ry. Co.,* supra, and *Tidwell* v. *Atlanta, Birmingham & Coast Railroad Co.,* 42 *Ga. App.* 744 (157 S. E. 535), and cit. The court did not err in directing the verdict for the defendant.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. Stephens, P. J., and Sutton, J., concur.*