27298. POWELL, receiver, *et al. v.* CARTER.

DECIDED MARCH 17, 1939.

*Dykes & Dykes, Harry G. Bowers,* for plaintiffs in error.
*J. A. Hixon, Fort, Fort & Fort,* contra.

BROYLES, C. J. ■ When this case was here before (57 *Ga. App.* 360, 195 S. E. 466), this court made the following ruling: "The petition, a suit by the plaintiff against the receiver of the defendant railway company and its engineer for damages alleged to have been inflicted by reason of the negligent operation of one of its trains at a public railroad crossing, which charged, among other things, that the defendants were negligent in failing to give warning of the approach of the train to such crossing, and in operating said train at a dangerous and excessive rate of speed, and further charged defendants with negligence, in that, after seeing the plaintiff approaching said crossing and so close thereto as to

be unable to bring her car to a stop before reaching the same, they failed to apply the brakes and stop said train to prevent doing injury to the plaintiff but instead speeded up its train in an effort to precede plaintiff over said crossing, was not subject to general demurrer." On the trial now under review plaintiff amended her petition by alleging that, because of the construction of the railroad track through certain deep cuts, a person approaching the railroad crossing in question from the north could not hear the blowing of the whistle of the defendants' train at the blow post located some 400 yards east of the crossing. The defendants interposed a general demurrer to the petition as so amended, on the ground that it showed that even if the defendants failed to blow the whistle at the blow post in question, such failure was not the cause of, or even a contributing cause to, the plaintiff's injury. The demurrer was overruled and the defendants excepted. We think the judgment on the demurrer was correct. While said amendment eliminated the charge that the defendants were negligent in failing to give warning of the approach of the train to the crossing by blowing the whistle, the other charges of negligence, as set out in the above-quoted ruling of this court, were not eliminated; and that ruling has become the law of the case.

■ On the trial now being reviewed, the evidence showed the following undisputed facts: The plaintiff was driving her automobile southward towards the public railroad crossing in question; she had stopped at another public railroad crossing about 1500 feet north of the railroad crossing in question, and had then continued towards the latter railroad crossing; the highway on which she was driving, as she approached the crossing, became a steep descent and a curve; and she testified that while driving down this descent and around the curve she increased the speed of her car until she was operating it at a speed of about 40 miles an hour, and she did not reduce the speed until she got within' 75 to 100 feet of the crossing when, for the first time, she saw the train approaching the crossing; she put on her brakes and tried to stop the car, but it skidded about 80 or 85 feet; and, in attempting to prevent a collision, she pulled her car off of the highway and to the right, and ran it across a drainage ditch near the track; her car's front wheels safely crossed the ditch, but its back wheels struck a mound or bank of dirt near a telegraph pole, and this made the car tilt

over against the train and caused her injuries; the train consisted of two passenger coaches, and its entire length was 150 feet, and all of the train, except 17 feet of it, had passed over the crossing when it collided with plaintiff's car. The highway on which she was driving was paved, but its surface was worn down until it was smooth and slick, and the plaintiff testified that this condition of the road caused her car to skid when she applied her brakes, and that if the road had not been so slick her car would not have skidded when she put on the brakes and she could have stopped it before getting to the crossing; that (as testified by her) if she had started reducing her speed as she drove down the steep descent and around the curve she probably could have stopped the car, after seeing the approaching train, before reaching the crossing. The plaintiff did not, as required by law, bring her car to a full stop 50 feet before reaching the crossing; and she testified that if she had so stopped the collision would not have occurred. Her brakes were in good condition; it was in the daytime; the weather was fair and her eyesight and hearing were good; the crossing sign, which had on it the words: "Railroad Crossing, Dangerous, Stop, Georgia Law," was standing 100 feet from the crossing, and was in plain view of any one approaching the crossing; the train was coming up a steep grade and was running 30 to 40 miles an hour when it approached the crossing; the plaintiff had previously driven a car on that highway on one occasion only and that was in the nighttime. The plaintiff was the main witness for herself, and her testimony, in many respects, was self-contradictory, evasive, vague, and equivocal, especially as to the speed of her car, as to the distance of her car from the crossing when she first saw the train approaching it, and as to the condition and visibility of the crossing sign. Therefore, under repeated rulings of the Supreme Court and this court, the testimony of the plaintiff should be construed most strongly against her. And when so construed it shows that her injuries were not caused by any negligence of the defendants as specified in her petition.

"Negligence, to be the basis of a recovery, must be the proximate cause of the injury; and if the injury would have occurred regardless of the negligent act, there can be no recovery." *W. & A. R. v. Crawford*, 47 *Ga. App.* 591 (170 S. E. 824). It appears from plaintiff's own testimony, and the other undisputed evidence, that

there were several proximate and concurring causes of the injuries sued for, to wit: (a) the failure of the plaintiff to reduce the speed of her car when driving it down the steep descent and around the curve in approaching the railroad crossing (such failure being a violation of the law); (b) the worn and slick condition of the highway which caused the plaintiff's car to skid when she applied the brakes; and (c) the small mound near the railroad's tracks which tipped over her car against the train. The defendants were not responsible or liable for any of these things that caused the injuries of the plaintiff. As heretofore stated, the specification of negligence (subpar. (a) of par. 8 of the petition) based on the alleged failure of the engineer to blow the whistle when approaching the crossing, was eliminated by the amendment to the petition. The specification of negligence (subpar. (c)) that the defendants were negligent in failing to have the engine equipped with a certain type of whistle, as required by statute, is without merit, since the statute refers only to trains operated by steam, and the undisputed evidence shows that the engine in question was propelled by a gas-electric motor; and there is no statute of this State providing for any particular type of whistle on such an engine. As to the remaining specifications of negligence, none of them is supported by any evidence adduced, and the verdict in favor of the plaintiff was contrary to law and the evidence. The court erred in overruling the general grounds of the motion for new trial. In view of this ruling it is unnecessary to pass on the special grounds of the motion. None of our present rulings is in conflict with any of our rulings made in the previous decision of this case.

*Judgment reversed. Guerry, J., concurs specially. MacIntyre, J., dissents.*

GUERRY, J., concurring specially. The petition alleged, and the evidence of the plaintiff herself was, that she was driving her automobile in the daytime approaching a railroad crossing on a paved, public highway. Pictures of the scene of the accident introduced showed that the crossing was marked by three signs: one, the regular crossarms sign placed at a railroad crossing; another, the square sign, "Georgia Law, Stop, Unsafe Railroad Crossing;" and another, the circular highway sign with the cross, "R. R." She testified that she had no actual knowledge of the presence of the crossing,

being unfamiliar with the road. The undisputed evidence shows that the highway sign marking the crossing was 162 feet from the crossing, and the Georgia law stop-sign was 104 feet from the crossing. The plaintiff had stopped her car at a road crossing about 500 yards from the scene of the accident, and testified: "Starting from there I continued to increase my speed, leaving that station, going around the curve down the hill. I increased my speed up to thirty-five or forty miles per hour." She testified that when she was eighty to one hundred feet from the crossing she saw the train which was about the same distance away. She immediately put on her brakes, and her skid marks showed from that point to the railroad. She testified: "There were skid marks nearly one hundred feet down the road, and they skipped a little where I released my brakes. . . I checked my speed the first time I saw the train, and up to that time I was increasing my speed. . . When I started down that hill and around that curve, if I had started checking my speed instead of increasing it the train might have gotten ahead of me and would not have hit my car, but I checked my speed 100 feet away because I put on my brakes and almost stopped before I got to the train." The train was a two-car motor train, and was 150 feet in length. The paved roadway and shoulders were 27 feet wide, and the train had passed over the crossing, but the plaintiff had turned her car to the west parallel with the train, and her car swerved around on account of its striking an embankment to the west of the paved road which caused the rear end of her automobile to strike the rear end and trucks of the last car of the train, and caused the injuries complained of.

The only evidence which might have been sufficient to sustain any alleged negligence against the defendants was that the train was traveling at a rate of speed of from 30 to 40 miles per hour. The plaintiff testified that the train was about the same distance from the crossing as she was before the engineer could see her car approaching the crossing and that he speeded up the train to get by. It was shown by uncontradicted evidence that, traveling at the rate of speed shown, it would have been impossible to have stopped the train before it reached the crossing. Code, § 94-506, requires an engineer on approaching a crossing, in addition to keeping and maintaining a constant and vigilant lookout also along the track

ahead of his engine, to *otherwise exercise due care* in order to avoid doing injury to any person or property which may be on said crossing, or upon the line of railway within fifty feet thereof. The only evidence that might be construed by the jury as negligence on the part of the defendants was whether the engineer should have had his train under such control that he could stop it in order to avoid doing injury to a person at the crossing. See *A. C. L. R. Co.* v. *Bradshaw,* 34 *Ga. App.* 360 (129 S. E. 304). The jury found by their verdict that the defendants were negligent in this respect. Such negligence, however, was not negligence per se, but ordinary negligence. The jury was authorized to find that it was not negligence per se for the plaintiff to fail to comply with the provisions of the Code, § 95-1804, with respect to stopping 50 feet from the tracks upon approaching a crossing, and that it was not negligence per se to fail to stop, look, and listen upon approaching or entering a railroad crossing. Nor could it be held that the failure to see the signs was negligence per se, but all these facts were circumstances to be considered by the jury along with the other facts and circumstances in passing on the question of negligence, and in weighing the negligence of the one as against the negligence of the other. Nothing else appearing, I would be indisposed to set aside a finding by the jury that such acts of negligence of the defendants were greater than the negligence of the plaintiff and were the proximate cause of the injury. The plaintiff's own testimony shows, however, that her failure to decrease the speed of her car, while rounding a curve and going down a "steep incline" until the moment she sighted the approaching train, was in itself negligence per se, in that it violated the provisions of the Code, § 68-303. See *Elsbery* v. *State,* 12 *Ga. App.* 86 (2) (76 S. E. 779). A violation of this section is made a misdemeanor. Code, § 68-9908. The violation of the provisions of any of these statutes with respect to the operation of automobiles over public highways is negligence per se. *Orange Crush Bottling Co.* v. *Smith,* 35 *Ga. App.* 92 (132 S. E. 259); *Holloman* v. *Hopson,* 45 *Ga. App.* 762 (3) (106 S. E. 45). In the latter case the following instruction was approved: "Where the statute lays down a rule requiring a person to comply with certain requirements in the operation of an automobile, if a person fails to comply with that requirement, whatever it may be, that would be negligence per se." See also *Central Ry. Co.* v. *Smith,*

78 *Ga.* 694 (3 S. E. 397); *Southern Railway Co.* v. *Davis,* 132 *Ga.* 812, 814 (65 S. E. 131).

Even though it appears that the plaintiff was guilty of negligence per se, it is still ordinarily a jury question whether such negligence is the proximate cause of the injury. If the petition had disclosed in this case that the only negligence which could have been charged against the defendant was the speed of the train which prevented it being stopped in time to avoid the accident, and had also disclosed the fact that the plaintiff failed to see the signs or halt the speed of her car until she saw the train and in addition thereto had increased the speed of her car around a curve and down a steep incline until she saw the train, and her speed was such that she could not stop her car within 86 feet, a general demurrer would have been sustained thereto. I think, the evidence in this case demands a finding that the increased speed of the car down the hill and around the curve, which was in violation of a criminal statute and was negligence per se, was the proximate cause of the plaintiff's inability to stop her car in time to avoid striking the train, which had already passed over the crossing. As was said by Judge Bleckley in the *Smith* case, supra: "A person while grossly negligent himself, has no legal right to count on due diligence by others, but is bound to anticipate that others, like he has done, may fail in diligence, and must guard, not only against negligence on their part which he might discover in time to avoid the consequences, but also against the ordinary danger of there being negligence which he might not discover until too late." *A. C. L. R. Co.* v. *Riley,* 127 *Ga.* 566 (56 S. E. 635); *Davis* v. *Whitcomb,* 30 *Ga. App.* 497 (8) (118 S. E. 488). This court has on numerous occasions held that similar facts, as shown by the petition as well as before the jury in this case, demand a finding that the injury was the result of the plaintiff's negligence. *Anderson* v. *Collins & Glennville R. Co.,* 47 *Ga. App.* 722 (171 S. E. 384); *Brinson* v. *Davis,* 32 *Ga. App.* 37 (122 S. E. 643); *Carroll* v. *Georgia Power Co.,* 47 *Ga. App.* 518, 521 (171 S. E. 208); *Tidwell* v. *A., B. & C. R. Co.,* 42 *Ga. App.* 744 (157 S. E. 535).; *Rape* v. *Tennessee, Alabama & Georgia Railway Co.,* 49 *Ga. App.* 175 (174 S. E. 551); *Lane* v. *Gay,* 41 *Ga. App.* 291 (153 S. E. 72); *Central of Ga. Ry. Co.* v. *Adams,* 39 *Ga. App.* 577 (147 S. E. 802); *Burnett* v. *L. & N. Railroad Co.,* 58 *Ga. App.* 64 (197 S. E. 663). I think the evidence demanded a

finding that the injury was the result of plaintiff's own negligence per se.

. MacIntyre, J., dissenting. . I think that the evidence taken in its most favorable light for the plaintiff, which should be done after she has secured a verdict, authorized the finding of the jury.