## 49299. GEORGIA NORTHERN RAILWAY COMPANY v. DALTON.

STOLZ, Judge.

The defendant railway company appeals from the overruling of its motion for judgment notwithstanding the verdict, following a verdict and judgment in favor of the plaintiff in her action for damages arising out of the collision of her automobile with the engine of the defendant's moving train.

On February 1, 1971, at approximately 5:45 p.m., Mrs. Mavis H. Dalton (plaintiff) was driving her automobile in a southerly direction on Georgia Highway 133 approximately .7 miles north of the city limits of Doerun, Georgia. At that point the tracks of the Georgia Northern Railway Company (defendant) intersected Georgia Highway 133. The plaintiff testified that she was driving home from work at the time of the collision; that this was the regular route she traveled to and from work, and that she had been doing so for about four years. The plaintiff further testified that she was traveling 55-60 m.p.h. while approaching the crossing; that "as I approached the crossing I looked first to my left and then to my right, I did not see the train, I did not hear the train, I continued traveling toward the crossing and then as I looked back to my left here it is, I tried to avoid it but I couldn't."

The undisputed evidence showed that at the time of the accident it was daylight, the weather was clear, and it had not been raining. Georgia Highway 133 was an asphalt-paved roadway with a slight upgrade as it approached the railroad crossing. Approaching the

crossing from the north (as was the plaintiff) the highway was straight. 496 feet north of the crossing, facing southbound traffic, was a yellow, circular sign with a black "X," with the letter "R" on either side thereof, warning southbound motorists of the crossing. At 364 feet from the crossing a large white "X" with the letter "R" on both sides thereof had been painted on the surface of the highway in the southbound traffic lane, giving another warning to motorists approaching the crossing. Twenty-four feet from the crossing a red octagonal sign, on which the word "Stop" was painted in white letters, faced southbound traffic. Eleven feet from the crossing, facing north, was a cross-arm sign with the words "railroad crossing" printed thereon in black paint on a white background. All of these signs were clearly visible to the plaintiff as she approached the crossing. Physical evidence showed that, immediately prior to the accident, the plaintiff's car skidded over 300 feet, and knocked down the "Stop" sign and "cross-arm" sign before colliding into the side of the engine of the defendant's train. The plaintiff contended that there were some obstructions to her view of the crossing. Over 40 photographs of the scene clearly contradict this. The various items which plaintiff urges as obstructions — a residence, church and propane gas tank — were not located on the defendant's right-of-way, were beyond its control, and can afford no basis for holding the defendant liable. The photographs show that they did not in fact obstruct a clear view of the crossing or of trains approaching it for a substantial distance in each direction therefrom.

The plaintiff testified that she was conscious of the fact that she was approaching the crossing and that she was thoroughly familiar with the road, the signs and the crossing. When asked if the railroad stop sign, the highway stop sign and the railroad crossing sign had any significance to her on the date of the accident, the plaintiff answered, "It's standard signs at all railroad crossings that no motorist. . .ever. . .they do the same as I do, they look and they keep on going, 99 percent of the motorist ever stop, I stop at all stop signs normally at intersections and what-have-you." See *Coleman v.*

*Western & A. R. Co.,* 48 Ga. App. 343 (4, 5) (172 SE 577), and relative to public crossings out in the country, see *Western & A. R. Co. v. Ferguson,* 113 Ga. 708, 713 (39 SE 306, 54 LRA 802). "[T]he driver's familiarity or lack of knowledge of the presence and location of the crossing is a determinative fact (compare *Evans v. Ga. Northern R. Co.,* 78 Ga. App. 709, 52 SE2d 28, with *Gay v. Smith,* 51 Ga. App. 615, 181 SE 129); but where, as here, there is nothing shown which prevented the driver from seeing the crossing in time to stop if it was occupied and obstructed [or that its obstruction by a passing train was imminent], whether or not the driver was familiar with the crossing is hardly material." *Ga. Northern R. Co. v. Stains,* 88 Ga. App. 6, 12 (75 SE2d 833). See also *Burnett v. L. & N. R. Co.,* 58 Ga. App. 64 (197 SE 663).

Other unimpeached evidence showed that the plaintiff's automobile skidded 300 - 308 feet, and knocked down the highway stop sign and the railroad crossing cross-arm sign before colliding with the right side of the engine of defendant's train. The state patrolman who investigated the collision estimated the plaintiff's automobile speed at 65-80 miles per hour prior to the application of its brakes by the plaintiff. The train was traveling 20-25 m.p.h. as it approached the crossing.

The defendant's engineer and brakeman testified that the engine's headlights were on. The engineer testified that the engine's bell, which rang automatically, had been in operation continuously prior to the train's passing through the City of Doerun (which it had just exited) up to the time of the collision, and that he was blowing the train's whistle as the train approached the crossing. The first persons to the plaintiff's car after the collision testified that all the car's windows were up. See in this connection, *Ga. Northern R. Co. v. Stains,* 88 Ga. App. 6, supra, and cases there cited.

The conflicts in the evidence — as to the speed of the plaintiff's automobile (55-60 m.p.h. by the plaintiff versus 65-80 m.p.h. by the state patrolman), the amount of daylight, and whether or not vision was obstructed as the plaintiff approached the crossing — cannot supply the basis for a judgment against the defendant. The plaintiff's speed cannot make the defendant negligent.

Whether it was broad daylight or dusk at the time of the accident can only show that perhaps the plaintiff may have been less negligent than the other facts would indicate, but it cannot make the defendant negligent. Even complete freedom from fault or negligence on the part of the plaintiff (which is not the case here) could not, of itself, establish liability on the part of the defendant. *Cook v. Kroger Baking &c. Co.,* 65 Ga. App. 141, 142 (15 SE2d 531); *Simpson v. Brand,* 108 Ga. App. 393, 400 (9) (133 SE2d 393).

In the record before us, there are over 40 photographs of the scene of this collision, some of which were taken only a few days after this collision. All parties concede that they truly and accurately depict the scene. These show a completely open crossing — with an unobstructed view of any train being operated thereon, and the defendant's right-of-way clean and clear of any growth that would obscure the view of a train by an approaching motorist. Plaintiff identified some of the photographs, stating that they correctly depicted the crossing and the area surrounding it, and these, as well as the other photographs show an absence of anything to obscure a driver's view. In this situation her contrary testimony must yield to the photographs. *Rape v. Tenn., Ala. & Ga. R. Co.,* 49 Ga. App. 175 (174 SE 551). There is simply no evidence in this record which shows any failure by the railroad to keep its crossing and right-of-way "in good order and repair."

It is axiomatic that all persons are required to exercise ordinary care for their own safety. The traffic laws of this state impose certain basic duties and responsibilities on persons who operate motor vehicles on the highway. Among these basic duties are: (1) Not to drive a vehicle at a speed that is greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing (Code Ann. § 68-1626 (a)); (2) to drive at an appropriate reduced speed when approaching a railway grade (Code Ann. § 68-1626 (c)); (3) that speed shall be so controlled as may be necessary to avoid colliding with any "other conveyance" (Code Ann. § 68-1626 (a)); (4) to stop at a railroad crossing where there is a "stop sign" (Code Ann.

§ 68-1662) and when a train is plainly visible and in hazardous proximity thereto (Code Ann. § 68-1661 (c)). The cases holding that one cannot recover where it appears that he or she is the author of his or her own misfortune, are legion in number. In *Central R. & Banking Co. v. Smith,* 78 Ga. 694 (3 SE 397) (1887), the plaintiff was struck by a train as he walked along the railroad tracks. While evidence showed that the train was not ringing its bell and was exceeding the speed prescribed by municipal ordinance, the Supreme Court reversed a jury award for the plaintiff. Speaking through Chief Justice Bleckley, the court observed: "It was at least as much his [plaintiff's] business to look for the engine as it was the engineer's business to look for him." P. 699. The court went on to hold that, "A person, while grossly negligent himself, has no legal right to count on due diligence by others, but is bound to anticipate that others, like he has done, may fail in diligence, and must guard not only against negligence on their part, which he might discover in time to avoid the consequences, but also against the ordinary danger of there being negligence which he might not discover until too late." P. 700. In the same vein see also *Powell v. Carter,* 59 Ga. App. 683, 689 (2 SE2d 191) and cit.; *Tidwell v. Atlanta, B. & C. R.,* 42 Ga. App. 744 (157 SE 535); *Fraser v. Hunter,* 42 Ga. App. 329 (156 SE 268) and cit.; *Seaboard C. L. R. Co. v. Sheffield,* 127 Ga. App. 580 (194 SE2d 484) and cits. The maxim quoted from Chief Justice Bleckley is of particular force in the case sub judice where there is *no evidence of negligence* by the defendant.

The facts here bring this case within the ruling of the Supreme Court in *Central of Ga. R. Co. v. Brower,* 218 Ga. 525 (128 SE2d 926): "Since the evidence indisputably shows that the plaintiff was injured solely because of his failure to exercise ordinary care for his own safety, a verdict for the defendant was demanded." See also *Southern R. Co. v. Blake,* 101 Ga. 217 (29 SE 288) and cits.; *Brinson v. Davis,* 32 Ga. App. 37 (122 SE 643); *Central of Ga. R. Co. v. Adams,* 39 Ga. App. 577 (147 SE 802); *Lane v. Gay,* 41 Ga. App. 291 (153 SE 72); *Tidwell v. Atlanta, B. & C. R. Co.,* 42 Ga. App. 744 (157 SE 535); *Rape v. Tenn., Ala. & Ga. R. Co.,* 49 Ga. App. 175 (174

SE 551).

Accordingly, the trial judge erred in failing to grant the defendant's motion for judgment notwithstanding the verdict.

*Judgment reversed. Bell, C. J., Eberhardt, P. J., Quillian, Clark and Webb, JJ., concur. Pannell, P. J., Deen and Evans, JJ., dissent.*

Submitted May 7, 1974 — Decided September 23, 1974 — Rehearing denied October 17, 1974 —

*Sam J. Gardner, Jr., Landau, Davis, Farkas & Spooner, Edmund A. Landau, Jr.,* for appellant.

*Thomas Wm. Malone,* for appellee.

Deen, Judge, dissenting.

The majority opinion holds that as a matter of law there is no evidence of negligence on the part of the defendant. It bases this finding on certain facts, all of which are controverted. Railroad employees testified that bell and/or whistle were sounding, but there is contrary evidence that the plaintiff was looking and listening and did not see or hear the train. This makes a jury issue on this question. *Climer v. Southern R. Co.,* 43 Ga. App. 650 (159 SE 782). "Where a number of witnesses testify positively that a train whistle was blown on the occasion in question, and plaintiff, suing by next friend, when asked, 'Did you hear the whistle?' answered, 'Not that I remember,' such answer is equivalent to testifying that he did not hear the train whistle, *Franklin v. Mayor &c. of Macon,* 12 Ga. 257 (2), *Mimbs v. State,* 2 Ga. App. 387, 388 (2) (58 SE 499), *Saliba v. Saliba,* 202 Ga. 791, 806 (44 SE2d 744), and the question thus being supported on one side by positive evidence and on the other side by negative evidence, is issuable and not to be determined by the court as a matter of law. *Climer v. Southern R. Co.,* 43 Ga. App. 650 (1, 2) (159 SE 782), and cits.; *Hunter v. State,* 4 Ga. App. 761 (1) (62 SE 466); *Pendergrast v. Greeson,* 6 Ga. App. 47 (64 SE 282); *Peak v. State,* 5 Ga. App. 56 (62 SE 665)." *Atlantic C. L. R. v. Heath,* 109 Ga. App. 422 (2) (136 SE2d 387).

There is further evidence that there were stop signs at the crossing, but the failure of a motor vehicle driver to stop does not per se block him from recovery. *Ga. R. Co. v. Davis,* 86 Ga. App. 63 (70 SE2d 788). There is evidence that the plaintiff was going 65 to 80 miles per hour (65 being the speed limit and therefore not negligence per se), but this is contradicted by testimony that the plaintiff was going between 55 and 60. The court holds that there were no obstructions barring a driver's view of the train, but this is contradicted by the driver's testimony. There is nothing particularly sacrosanct about photographs which demands that the view they appear to portray be believed as a matter of law over sworn testimony, particularly when they were not taken contemporaneously with the collision. "The positive testimony of a witness that a visible crack existed in the western wall was not absolutely overcome and rebutted by the introduction of a photograph of the wall, which failed to show any such physical condition. The photograph was to be considered only in connection with the other evidence and was not conclusive." *Savannah Elec. & Power Co. v. Horton,* 44 Ga. App. 578 (1a) (162 SE 299). Further, let us consider the testimony of one of the railroad employees: "Q. You don't know whether or not somebody in a car in that bottom gets their vision blocked when they are looking up at that train, do you? A. No . . .Is [Mr. Tillison] the one you've talked to every time you've had a wreck at that crossing? A. Yes, sir. Q. How many times have you run into people down there? A. Oh, about three times. Q. How many times have you almost hit folks down there? A. Every time you go over it."

This testimony was not objected to, and, when given by the defendant engineer, is certainly sufficient to raise a jury question as to the degree of care the railroad should have exercised in view of its actual knowledge that the crossing was exceedingly dangerous. It also to some measure at least supports the plaintiff's sworn testimony that she *did* look and that the view *was* obstructed, because at a normal intersection motorists are not "almost hit" *every* time a train goes by. "It is for the jury and not this court to say, if the train was not perfectly visible to [the plaintiff], why this was so and whether it

reveals an absence of ordinary care on his part. *Atlanta & W. P. R. Co. v. McCord,* 54 Ga. App. 811, 813 (189 SE 403)." *Seaboard C. L. R. Co. v. Mitcham,* 127 Ga. App. 102, 104 (192 SE2d 549).

The cases cited in the majority opinion are good law, but I do not agree with their applicability here. In *Central of Ga. R. Co. v. Brower,* 218 Ga. 525 (128 SE2d 926), quoted at length, the facts were that the taxi driver, after stopping behind another car, apparently blacked out, and hit the *thirty-third* car in a row of 83 railroad cars. In *Central R. & Bkg. Co. v. Smith,* 78 Ga. 694 (3 SE 397), the plaintiff was a pedestrian trespasser walking along the railroad tracks at night. The reversal of this case is apparently based entirely on the proposition that there is *no* evidence of the defendant's negligence, and the record does not bear this out. Insofar as it may be based on *comparative* negligence, the law is that in such cases the ultimate decision lies with the jury, not this court. The fact that the plaintiff sued for damages in the sum of $250,000 and recovered $20,000 suggests that the jury did in fact base its verdict on comparative negligence, on which subject it was correctly instructed by the trial court.

I am authorized to state that Presiding Judge Pannell and Judge Evans concur in this dissent.