## 24980. BAKER *v.* ATLANTIC COAST LINE RAILROAD CO.

DECIDED FEBRUARY 14, 1936.

*Lawson Kelley, W. D. Dickerson,* for plaintiff.

*H. F. Rawls, Wilson, Bennett & Pedrick,* for defendant.

MACINTYRE, J. F. L. Baker brought an action against the Atlantic Coast Line Railroad Company, to recover damages for personal injuries alleged to have been caused by a collision of the automobile he was driving with an unlighted passenger-car standing on a street-crossing in Nahunta, Georgia. By paragraph, the parts of the petition pertinent to the question at issue, to wit, whether the court erred in dismissing the petition upon general demurrer, are in substance as follows:

(3) On the night of April 21, 1934, the petitioner was driving his automobile over a much traveled highway leading from Waycross, Georgia, through Nahunta, to Brunswick, Georgia. Said highway was new, smooth, and wide, with but few curves, and traversed a level country, and was "adapted to safe higher rates of speed than a poorly constructed highway or one traversing a mountainous or populous country." The defendant's railroad "runs east and west between Waycross . . and Nahunta, and is in plain view of a person proceeding along said highway . . toward Nahunta . . from the time he arrives within five miles of Nahunta . . until . . he arrives within approximately one-half mile of Nahunta." Within about one-half mile of Nahunta, the highway leaves the railroad, curves to the right in a southerly or southeasterly direction, and, after proceeding straight for a few hundred yards, curves to the left, again proceeding in an easterly direction. At both of said curves, the highway "is wide, well banked, and properly graded, and the curves are gradual, and may

be traversed with safety by an automobile traveling at 40 or 50 miles per hour." (4) "Approximately 140 yards from the . . end of the second curve mentioned in the preceding paragraph," the defendant's main line of railroad, running north and south, crosses said highway "at approximately right angles." At this point said highway is within the limits of Nahunta, and is designated "Cleveland Street." Here "there is nothing to indicate the nearness of a town" to a person traveling east on said highway until he has reached a point beyond the intersection, there being no lights or buildings south of said intersection. "The rails at said crossing are laid into the pavement, and on a level therewith, there being smooth pavement in between the rails." (5) At about eight-thirty on said night, petitioner was traveling alone in a Ford sedan. He was not familiar with said highway, and did not know and could not know, that he was nearing a railroad-crossing. On said night petitioner "had observed that the highway was running parallel to defendant's east and west line railroad, and realized that when he turned to the right at the first curve . . .he was turning from said line of railroad." (6) "Owing to the fact that on said night petitioner had occasionally observed cattle and hogs standing and lying on the . . shoulders of the highway, and partially on the highway, he had . . adjusted the headlamps on said automobile so that the beams of light were lowered, and widened, and illuminated the sides and surface of the road. When thus adjusted the lights would better reveal any animal on the side of the highway about to move onto the highway, and would at the same time reveal any object on the surface of the highway for a distance of some fifty feet ahead. Said lights, when so adjusted, would not illuminate or reveal any object not on the surface of the highway, such as a suspended object or obstruction, until within a short distance of same, for the reason that the beams were projected steadily downward on to the surface of the pavement. . . With the headlamps so adjusted, petitioner was proceeding in a careful manner, his average rate of speed being approximately thirty miles per hour." (7) "Petitioner drove his automobile around the two curves described in paragraph three hereof, at a speed of approximately thirty miles per hour." (8) "While continuing at said speed, and keeping a close lookout on the road in front of him, petitioner suddenly observed . . the body of a long black railroad car, approximately four feet

above the surface of the highway, and completely blocking the same, but at said time petitioner was within ten or fifteen feet of said car; and though he applied the foot-brake of his automobile, and reached for . . his emergency brake, which brakes were in good working condition, for want of time he was unable to avoid crashing into the. railway coach, his car passing partly under the body of the same." (9) "This was an exceptionally dark night, and . . there was no light whatever on said coach, and no light, lantern, or torch to warn petitioner . . that the highway was blocked. There was no bell, or other device, to warn petitioner of the obstruction in the highway, and there was no agent or servant of defendant at or near said crossing to warn those persons using the highway that the highway was obstructed." (10) The defendant "did maintain a rectangular sign-board about 53 yards west of the crossing at said time, but the lettering was worn off," and·"it was nothing more than a colorless rectangle made of boards." Though "said sign was in the range of petitioner's head lamps . . , petitioner did not stop or slow down, because he did not associate said sign with a railroad-crossing." Had there been a proper sign at said place and petitioner had been warned fifty-three yards west of the crossing that he was approaching a railroad-crossing, he could have avoided running into said car.

(12) Said coach "formed a part of a. passenger train . . which had been stopped . . on the . . track . . in such manner that this particular coach, . . the last coach on the train, completely obstructed the highway for at least ten minutes before petitioner collided with it." Said train was not lighted, and was making no noise, "thus forming a dark and silent obstruction across the highway." There was no necessity of blocking said highway. The engineer was not tolling the bell of his engine. (13) Any light or lights beyond said crossing, that petitioner might ordinarily have seen, were cut off from his view by defendant's unlighted car, and he "believed that he was on an open country highway, remote from any place where he might reasonably anticipate the presence of a stopped, unlighted train." (14) Defendant's track at said highway "is laid into the pavement of the road, and level with said pavement, so that at night it does not have the appearance of a railroad-track and can not be seen until one is immediately upon it." Petitioner's "head-lamps, being so adjusted

as to illuminate the surface of the road, did not reveal the track, and did not reveal the body of the . . car until petitioner was within ten or fifteen feet of said car, at which time petitioner endeavored to avoid the collision, but was unable to do so." (15) Petitioner was free from fault, and "in the exercise of ordinary care in having his lights adjusted so as to illuminate the surface of the highway," and said collision and consequent injuries and damage "were due solely to the negligence of the defendant in the following particulars: (a) "In maintaining the main line of its railroad . . without providing a sign at a distance from the crossing within which travelers might stop their cars." (b) "In allowing the sign which it errected 53 yards west of described crossing" to deteriorate as alleged. (c) "In placing, on a dark night, an un-lighted railway coach across a much traveled . . highway at a place apparently remote from any . . crossing or town." (d) In allowing said coach, under such circumstances, "to remain across a public highway for ten minutes, or longer, without having any flagman or other trainman stationed to flag and shout warnings to travelers on the highway." (e) In allowing said coach and train "to obstruct at night a much traveled paved highway upon which defendant might anticipate that automobiles would be travel-ing at high rates of speed, without lighting a fuse in the highway, or placing a red lantern in the highway to warn travelers of the obstruction." (f) In failing to maintain at said crossing "an electric bell, gong, or other signal apparatus which would . . apprise persons approaching the crossing of the presence of a train standing upon or passing over the crossing." (g) "In unneces-sarily placing at night its unlighted railroad coach and train across a public highway at a point apparently remote from any railroad crossing or town, and allowing it to remain across the highway for ten minutes or longer." (h) "In failing, through . . the engi-neer on said train, to blow the whistle, or toll the bell, or sound some other warning which could have been heard at the crossing, as long as the . . crossing was blocked."

Many decisions were cited, analysed, and differentiated by counsel in this case. Since, however, each case differs in its facts from every other case, and since every case must be decided upon its par-ticular facts, we shall express briefly our conclusion that the judge did not err in sustaining the general demurrer and dismissing the

628

action. When the plaintiff so deflected the headlights of his automobile that they could not apprise him of the fact that the passenger-coach was immediately in front of him until he "was within ten or fifteen feet" of it, and so drove his automobile at the speed of thirty miles an hour with its "brakes in good working order," that he could not avoid striking the car, he was in the attitude of being the author of his own misfortune, and in a legal sense he consented to the injuries suffered. We cite the following cases as bearing upon our conclusion that the demurrer was properly sustained: *Brinson* v. *Davis,* 32 *Ga. App.* 37 (122 S. E. 643); *Central of Georgia Ry. Co.* v. *Adams,* 39 *Ga. App.* 577 (147 S. E. 802); *Lane* v. *Gay,* 41 *Ga. App.* 291 (153 S. E. 72); *Tidwell* v. *A., B. & C. R. Co.,* 42 *Ga. App.* 744 (157 S. E. 535); *State Highway Department* v. *Stephens,* 46 *Ga. App.* 359 (167 S. E. 788); *Carroll* v. *Georgia Power Co.,* 47 *Ga. App.* 518 (171 S. E. 208).

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*