27461. HALLMAN *v.* POWELL, receiver, *et al.*

DECIDED JULY 14, 1939.

*J. A. Hixon, Fort, Fort & Fort,* for plaintiff.
*Dykes & Dykes, H. G. Bowers, Wingate Dykes,* for defendants.

GUERRY, J.   Clyde E. Hallman, suing for and as next friend of his minor son Wyllis Hallman, brought suit for personal injuries against L. R. Powell Jr. and Henry W. Anderson, as receivers of the Seaboard Air-Line Railway Company, and G. W. Sawyer, the engineer of the train at the time of the accident.   The defendants' general and special demurrers were sustained and the plaintiff excepted.   The plaintiff substantially alleged that the injuries to his son were sustained at a public crossing outside the corporate limits of the City of Americus, Georgia, at about 11:30 a. m. by reason of a collision between an automobile and the sixth box-car of the defendants' freight-train, the engine and five cars of which had already passed over the crossing.   The negligence alleged against the defendants were the facts that the crossing was a dangerous one, there being on the north side of the tracks a high embankment through which the highway was cut, and that even if the defendants had given the required signals on approaching said crossing they could not have been heard by one approaching said crossing from the north because of the high embankments which diverted the sound of the defendants' train to the south; that the defendants were further negligent in that the train was proceeding at a rate of fifty miles per hour when it reached the crossing. The petition alleged that the driver of the car could not see the crossing and the train thereon until he was within one hundred feet thereof; that the public road and the railroad at this point where they intersect run at right angles to each other, and the train was traveling west and the automobile was traveling south; that on account of the ditches and the telephone or telegraph poles erected on either side of the railroad on the company's right of

way it was impossible for the driver of the car to turn to the right or to the left (east or west) and thus avoid a collision; that there was an embankment to the east of the public road and to the north of the railroad tracks which, under the most favorable circumstances, effectually prevented the engineer approaching from the east from seeing travelers approaching said crossing from the north, and prevented travelers approaching from the north from seeing said train until they were within eighty to one hundred feet of the crossing; that the company had allowed the triangle between the intersection and this embankment to become grown up with weeds and bushes so as to prevent a traveler approaching the crossing from the north from seeing a train approaching said crossing from the west until it was within fifteen or twenty feet of said crossing. It was further alleged that a train on the crossing could not be seen on account of a curve in the public highway until the traveler was within one hundred feet of the crossing.

The petition, construed most strongly against the plaintiff, alleged facts which showed that if the signals had been given as required the occupants of the automobile and the driver thereof could not have heard them on account of the physical surroundings, such as the road being in a cut and the view of the railroad's approach from the west by a traveler from the north being obstructed by a large embankment together with pecan trees and a house, all of which obstructed the view and diverted the sound. The failure therefore to give the signals was not a contributing ground of negligence. The speed of the train was not a contributing cause of the accident for it is alleged that "the railroad tracks, signs, and cross-arms can not be seen until the crossing is approached to some one hundred feet." The petition alleged that "it was the sixth box-car from the engine that collided with and struck the automobile in which petitioner's son, Wyllis Hallman, was riding" and "the trucks on the sixth car jumped the track." It is not alleged that the engineer saw or could have seen the plaintiff at the time he was approaching the crossing, it being alleged that the operators of the train could only see one approaching the crossing in an automobile from the north when "they got within some fifteen or twenty feet of said crossing." Construing the petition against the pleader, as must be done by this court, it will be seen that the engine was across the crossing before the plaintiff

was in sight on the public road. The speed of the train after this time did not contribute to the injury, for the crossing was already occupied by the train at the time of the collision. It is further alleged that had the triangle between the railroad, the public highway, and the embankment been clear of weeds and brush, the engineer could have seen a traveler approaching from the north and a traveler could have seen a train approaching from the east, fifty feet or more further away than it was possible to do under the circumstances that existed at the time of the collision. It is not alleged that the company had failed to place along the highway the proper, necessary, required signs notifying travelers of such crossing; nor is any reason alleged why the occupants of the car failed to read the signs, heed the warnings, and reduce the speed of the car as required by the Code, § 68-306, when rounding curves and descending steep descents, both of which were present in the instant case as set forth in the petition. It is not alleged that the occupants of the car were unfamiliar with or did not know of the existence of the crossing, or that they did not know that they were approaching said crossing. No reason is alleged why the driver of the car did not stop his car after discovering that the train was occupying the crossing, although it was alleged that he could see the train on the crossing approximately one hundred feet before he reached it.

A review of the cases relied on by the plaintiff in support of his petition may be pertinent. In *Central of Georgia Railway Co.* v. *Heard,* 36 *Ga. App.* 332 (136 S. E. 533), it was alleged that the defendant had stopped its train on a crossing in violation of a city ordinance, that the night was foggy, that the plaintiff was proceeding at a rate of fifteen miles per hour, that the plaintiff was unaware that she was in the immediate vicinity of the crossing, that the train loomed up suddenly in front of her when she was within twenty feet of the crossing, that she cut sharply to the right but side-swiped the train and sustained the injuries. In distinguishing that case from *Brinson* v. *Davis,* 32 *Ga. App.* 37 (122 S. E. 643), the court said that "there was no allegation, as there is here, as to the fog and other weather conditions, and as to the manner in which the plaintiff was affected thereby." In *Mann* v. *Central of Ga. Ry. Co.,* 43 *Ga. App.* 708, 713 (160 S. E. 131), the negligence alleged against the defendant was the blocking of a

crossing at the bottom of a steep descent by stopping its train thereon for an unreasonable length of time, contrary to the ordinance of the town, that on account of the location of the crossing at the bottom of a steep hill and around a curve, the train could not be seen until too late to stop the automobile, which was approaching at a speed of only fifteen miles per hour, and that the driver had stopped his car before starting down the hill in his heavily loaded truck and had listened and heard no train or seen one, and that he had no reason to suspect anything on the track but moving trains, the crossing being the main crossing. The court in that case said, "As a pleading, the description is not of a motorist driving headlong and smashing into a railroad train because he was paying no attention. The petition shows that he did exercise some caution, and that he did not fail to observe the obstruction merely because he *would not,* but that he did see it as soon as it was in the clear range of his vision, and was then unable to stop the truck within the remaining distance." In *Southern Railway Co.* v. *Riley,* 57 *Ga. App.* 26 (194 S. E. 422), it will be noted that it was alleged that the sign or warning notifying travelers of the crossing was down, and it was nighttime, and the presence of the train on the crossing could not have been discovered until the automobile was within thirty feet of the crossing. In *Gay* v. *Smith,* 51 *Ga. App.* 615 (181 S. E. 129), it was alleged that the accident occurred on a dark and foggy night, and that the driver and the occupants of the car were unfamiliar with the fact that there was a crossing there, and they were proceeding at an orderly rate of speed. It can be readily seen that the facts of all these cases are distinguishable from those alleged in the instant case. Here it appears that the accident occurred at about 11:30 o'clock in the middle of the day, and that the occupants of the car could see the crossing approximately one hundred feet therefrom. There is no allegation that the driver or the occupants of the car were unfamiliar with the crossing, or that the railroad company had not placed the required signs giving warning of a crossing. The automobile collided with the sixth box-car of the train, the engine and five cars having already crossed the crossing.

We are of the opinion that this case falls within that class of cases beginning with *Brinson* v. *Davis,* supra, where it was held that the allegations of the petition showed, as a matter of law, that

the plaintiff's injuries were caused solely by the negligence or want of ordinary care on the part of the driver of the car in which the plaintiff was riding as a guest, and that therefore the railroad company was not liable. See also, *Eberhart* v. *Seaboard Air-Line Ry. Co.*, 34 *Ga. App.* 49 (129 S. E. 12); *Tidwell* v. *Atlanta, Birmingham & Coast R.*, 42 *Ga. App.* 744 (1) (157 S. E. 535); *Central of Ga. Ry. Co.* v. *Shepard*, 37 *Ga. App.* 643 (141 S. E. 415); *Central of Ga. Ry. Co.* v. *Adams*, 39 *Ga. App.* 577 (147 S. E. 802); *Lane* v. *Gay*, 41 *Ga. App.* 291 (153 S. E. 72); *Anderson* v. *Collins & Glennville R. Co.*, 47 *Ga. App.* 722 (171 S. E. 384); *Baker* v. *Atlantic Coast Line R. Co.*, 52 *Ga. App.* 624 (184 S. E. 381). We fully recognize the rule that questions of negligence and diligence are exclusively for the determination of the jury, yet it appears to us from the pleadings in this case that the injury complained of was caused solely by the negligence of the driver of the automobile. If the train had stopped before it reached the crossing and had then started again, the crossing would still have been occupied and blocked by the moving train, and still the driver would have failed to stop his car. So far as appears from the petition, the driver of the car and the occupants thereof were familiar with the crossing, it being alleged that the crossing had been there for at least fifty years. The crossing was marked by the usual or required signs. If, as alleged, it was a dangerous crossing on account of its location in the cut, the driver of the car knew of it. The collision, as appears from the petition, occurred near noontime on a clear day. The occupants and driver of the car could see the train on the crossing, according to the allegations, about one hundred feet before they reached it, and it is clear to us from the facts that the instant case is distinguishable from the cases cited by the plaintiff, and that it falls within the ruling laid down in *Brinson* v. *Davis*, supra, and the other cases above cited.

The judge did not err in sustaining the general demurrer and a ruling on the special demurrers becomes therefore unnecessary.

*Judgment affirmed. Broyles, C. J., concurs. MacIntyre, J., dissents.*