## 30536. ATLANTA NORTHERN RAILWAY COMPANY v. SEALS.

DECIDED JULY 15, 1944. REHEARING DENIED JULY 25, 1944.

*MacDougald, Troutman & Arkwright, T. M. Smith,* for plaintiff in error.

*J. C. Bowden, A. G. Smith,* contra.

SUTTON, P. J. J. C. Seals sued the Atlanta Northern Railway Company for damages for personal injuries, and obtained a verdict and judgment against the company for $2000. The defendant made a motion for a new trial, which the court overruled, and the exception here is to that judgment.

The petition alleged substantially that the defendant's trolley line runs from Atlanta to Marietta, Georgia, and that its track crosses a public highway just before reaching a bridge over the Chattahoochee River at Bolton, Georgia; that approaching said crossing on the highway in a northerly direction certain buildings to the right conceal said track, and to the left a high embankment hides the track, and it can not be seen from either directon, thereby making a dangerous crossing as defined by the laws of Georgia; that going north said highway turns sharply to the left before reaching said bridge, creating "a complicated place of travel" that is located in a thickly populated neighborhood and is continually traversed by both vehicles and pedestrians, "and at the same time defendant operates its trolley cars there;" that about 7:30 o'clock on the morning of February 3, 1943, the plaintiff and several other persons were traveling in a truck, so covered that

the plaintiff could only see out of the rear end of the truck, en route to their work at the bomber plant near Marietta, Georgia; that when the truck reached a point just over said track one of the defendant's trolley cars, en route from Marietta to Atlanta, traveling at the negligent and rapid rate of speed of about thirty miles an hour, struck the left side of said truck, hurling it over on one side and injuring the plaintiff as herein set out; that at the place where the plaintiff was injured, said track is beyond the corporate limits of the City of Atlanta, and is classed as an interurban street-car line, and is governed by the laws and regulations controling railroads, and the defendant had not complied with the law requiring the posting of signs or notices at dangerous crossings; that by reason of said truck being struck by said trolley car as stated, the plaintiff's left leg was broken at the knee, causing him to be kept at Grady Hospital for seven weeks under the care of doctors, and he can not now bend said knee, and it is continually painful; that prior to this injury he was without physical defect, and at the time of the injury was employed at the bomber plant, earning 40 cents an hour, and working eight hours a day; that at said time he was twenty-eight years old and had a life expectancy of 35.69 years; that by reason of said injury his ability to work and earn money has been reduced more than one-half; that said injury is permanent, and is the direct and proximate result of the defendant's negligence as set forth in the petition; that no negligence can be attributed to the plaintiff because he was riding in a covered truck and could not see said trolley car approaching, and had no interest in said truck or control over its operation. The petition alleges that the defendant was negligent: "a. In operating a trolley car at a fast, reckless, and negligent rate of speed . . hidden from view by said high embankment, and so hidden until almost reaching said highway. b. In failing to have said trolley car under control so as to avoid collision with said truck at the time of approaching said crossing. c. In failing to keep a watch in the direction traveling, failing to check the speed of said trolley before reaching said crossing and before striking said truck. d. In failing to post board signs as is required by the laws of Georgia at said dangerous crossing. e. In failing to exercise due care and diligence in operating said trolley at a complicated point on said highway . . and in failing to . . exercise due care and

precaution for members of the general public who might be on or near said highway and at said crossing, and for plaintiff. f. In operating said trolley as alleged . . and causing the same to run against said truck and injuring plaintiff as aforesaid." The plaintiff asked for $10,000 damages for pain and suffering, reduction in his capacity to work and earn money, and the necessary expense of employing physicians.

After admitting that it was a corporation with agents in Fulton County, and that it operated trolley cars between the City of Atlanta and Marietta, Georgia, the defendant denied every other allegation of the petition.

Since the uncontradicted evidence shows that the plaintiff was seriously, painfully, and, most likely, permanently injured, and that his ability to work and earn money was greatly reduced, it will not be necessary to recite the evidence bearing upon these questions. It is also true that counsel for the plaintiff abandoned the averment of negligence that the defendant failed to post notices of the approach to the crossing. Again the evidence is conclusive that at the time of the accident the plaintiff was riding in the body of a truck so covered with canvas that he could not see out of the sides or the front of the truck, and that he was a passenger in the truck, en route to his work at the bomber plant, and had no interest in the truck and no control over the driving or handling of the vehicle. It is also true that numerous witnesses for the defendant who were in a position to know whether the motorman on the trolley car signaled his approach to the crossing in question testified positively and unequivocally that such signal was repeatedly given; the only evidence leading to a contrary view having been given by persons who were on the truck and were in a very poor position to know whether the signal was sounded or not; and these witnesses merely testified that they did not hear any signal. The evidence is undisputed that the accident occurred before it was good light on the morning of February 3, 1943, at a time when it was so dark that the truck, the trolley car, and the automobiles traveling the road at the time in question had their headlights on.

Special ground 1 of the motion for new trial excepts to the verdict on the ground that it was contrary to the evidence, and "because under the evidence a verdict as a matter of law was demanded in favor of the defendant." Counsel for the plaintiff in

error consider this special ground and the general grounds together, and we shall do likewise.

Harvey Wiley, sworn for the plaintiff, testified in part as follows: "I was driving. I knew before I got to that particular place on that morning that a street-car track crossed the road there;' at the time I approached that crossing my truck was traveling about twenty miles an hour. I was going to Marietta and there was an automobile meeting me coming to Atlanta, and in the curve right at the street-car track this car passed me. . . This automobile was going about thirty-five or forty miles an hour. After the automobile passed me I seen the street car there then; he was right on me. . . Approaching the crossing to my left I did not see the street car approaching. There was not anything there that would keep me from seeing an approaching street car—nothing more than that automobile was between me and him —between me and the street car. Looking to my left there as I approached there, there was a bank of dirt. A street car coming up behind that bank of dirt, I could not see it before it gets right at the track; this track crossed the road at an angle to the left; it goes across the street. When the street car appeared I was there on the track. He hit me right about middleways of the body; it was a little towards the front, but it did not touch the cab. It stuck in the body. If it had not stuck in the body, it would have knocked us all in the river. It knocked me, I imagine, about two feet, by sticking in the body. My car stayed on the wheels. The street car stuck up in the body and held it down. The canvas part of the truck fell over. There was about twenty or twenty-five in the truck; the street car stopped in the truck. Before the street car stopped it went about two or three feet. I was still in the road when the street car stopped; I was over on my right side of the road; I was driving to the right. Jim Long was riding on the seat with me. It was kind of foggy." On cross-examination he testified in part as follows: "When this automobile crossed the track, then is when I seen the street car. I imagine I was just the length of the automobile from the street car. The other car just did get through—passed between me and the street car. He met me and passed on my left. I was on my right side of the road and the street car was crossing the road. The side of the street car I was trying to get by on was the right

side. If I had hit the street car, he would have hit my fender, or cab, or something, but he hit me dead in the body. When I saw the street car it was not time to do anything; it was right on me. I was going about twenty miles an hour, about twenty or twenty-five. I had been along there every day; I had been driving this truck . . right out . . the same route. I was driving for Herbert, the boy the truck belonged to. He is a colored boy; it was his truck; he was paying me to drive it. Seals was working at the bombing plant. He paid to ride on the truck. There is a curve there where the street is crossed by the street-car track; it is an S curve. It curves again before it gets to the bridge." Re-direct examination: "The road turned to the left going towards Marietta right in the crossing; it is about half a block or a block from there to the bridge. Going on that crossing you can see the bridge before you get to the crossing, looking towards the north." James Long, sworn for the plaintiff, testified in part as follows: "I was sitting by the driver there. The street car ran against the truck; it hit just beyond the cab. Just as we were going onto that track, we met an automobile just beyond the track, almost on the track. The street car ran into the truck. I did not see anything else at the time we met the automobile. The street car hit the truck just as he got by. My opinion is that the street car was going about thirty-five miles an hour." Cross-examination: "I did not see it until after the car had got by, and it was ready to hit the truck then. I could not say exactly whether the street car traveled more than six or eight feet, and just as the automobile got by I could see the street car. From having seen that street car go that distance I say it was traveling thirty-five miles an hour—that is as near as I can figure. I could not tell you what the street car was doing (meaning, how fast it was moving), but that is my idea about it." While the testimony of the plaintiff was largely devoted to the manner in which he was injured, the extent of his injuries, and his earning capacity, he also testified in part: "I can not swear positively as to which one hit the other because I did not see it; but after he hit it I seen it; I saw the position they were in; I know the truck was moving because I was riding in it; I know the street car was obliged to be moving the way it hit. I always went to the bomber plant over this same road every morning . . and this man was driving

every morning I rode with him for about two weeks." T. B. Parks, sworn for the plaintiff, testified in part: "I was sitting about middleways of the truck on the left-hand side. The place of the accident is in Fulton County. There is a lot of traffic along there that time of the morning—trucks and automobiles going to work up there and people coming from there. I could not see out of the truck." Dr. W. A. Arnold, sworn for the plaintiff, testified in substance that the plaintiff was suffering from a broken left leg, which had "about a 45-degree angle" that appeared to be a permanent injury. John Barnes, sworn for the plaintiff, testified in part: "I was sitting pretty close to Seals. As we got down there to the crossing, and the boy slowed for the crossing down there . . when I knowed anything I heard a roar . . but I could not see on account of the canvas. The street car was sticking up in the truck."

W. P. Tapp, sworn for the defendant, testified in part as follows: "I was operating the street car. The track headed for Atlanta is on the left-hand side of the bridge, and you have to be very cautious in crossing there because every automobile has to pass on your right. So I had my headlight on, a big headlight, and we came on; and as you leave the bridge you cross the highway and get on a little private right of way about fifty feet. Then you cross the highway again and get on another private right of way right in front of the substation. And just as I got out into the highway, I noticed the truck coming. We came across the bridge very slowly, and there is a deep curve and you can not possibly go into this curve over ten miles an hour . . and we came into this little private right of way, and then into the main highway. I stopped where I crossed the highway the second time after leaving the bridge; that is exactly where the collision occurred. I looked up the highway and I saw this truck coming, and I just stopped. I was into the highway. That does not give anybody any room to get through except by going down the track and in behind me. It would be rough, but there is a clearance there. I stopped and got out of the seat and moved back to the first seat in the trolley, and when I did that, the truck came right around and the corner of the truck hit into the street car. I swear positively that this street car was at a dead stop when the collision between the street car and the truck occurred. I saw the

truck before it got down to the track crossing. I would estimate twenty-five to thirty feet. When I saw the truck I just stopped because I was going slow to start with, because it looked as if there was a possibility he did not see me, and I just stopped to make sure I would not get hurt. The truck hit immediately in front of the control stand on the street car; the control stand is on the left-hand side right in front of the left-hand window. The highway is curved there; it makes it come across at an angle. There was about four and a half or five feet between the street car and the river bank; there was not enough room for the truck to move there in between the street car and the river bank. The truck did not slacken any of its speed. In other words, that was my conclusion. I saw that he was going to go in front of me, or at least try, so I stopped. I knew I did not have time to get out of his way with the speed that I had. This is a high embankment here onto the right, with the exception of about twenty feet that extends down to the highway. No automobile swerved directly in front of me when I reached this point to cross the highway; I did not see the automobile. The street-car track crosses from behind this embankment over and passing beyond this building. To the left approaching this crossing the street car can be seen before it leaves the private right of way. When the truck ran into me I lacked five feet of being across the street. The street car crossing that highway is almost at right angles with a car traveling towards Marietta. It was not an absolute right-angle collision at all; the truck was at an angle to my left; it was the left front end of the body of the truck that struck the street car . . he made an immediate turn to the left to try to stay on the highway rather than go down the river bank, so that automatically locked the street car and the truck body together and sealed it and stopped it. The accident did not happen at the building; it happened in the curve after you absolutely pass the substation. I crossed the bridge about ten miles an hour and I kept up that ten-miles-an-hour gait until I stopped at the crossing. From the bridge to where I stopped my car was about one hundred feet; I do not think it could hardly be one hundred yards; that building is about forty feet long. I opened the gate of the truck so the negroes could get out; the canvas on the truck was fastened down, and I had to untie that canvas; there was no automobile between

this trolley car and the truck. I crossed the highway like this and went behind this brick building." J. M. Reed, sworn for the defendant, testified in part: "I was collecting fares at the time of the collision. At the time of this collision the street car was in the Marietta road on the highway; it was almost all the way across the street; it was crossing the highway at the substation going towards Atlanta. I was almost at the front of the trolley. I was walking to the front of the car. I saw the operator; he was coming back towards where I was at. At that time the car had stopped. The truck was about fifty feet from the trolley before I saw it. I did not notice any slackening of the speed of the truck. The front of the street car . . on the left side was mashed in. From the bridge to the crossing it is about one hundred and seventy-five feet. The roadway directly at the crossing could not be over thirty-five or forty feet; when the street car came to a stop it was almost directly across the highway. There was not room for an automobile to pass. There is a lot of travel at this crossing where this crash took place. When this crash took place I looked at the truck. The left side of the truck behind the cab was crushed in. Just a little farther it would have toppled off down in the river." The testimony of the other witnesses introduced by the defendant add little or nothing to that of the foregoing witnesses.

The evidence clearly shows that the plaintiff was in no wise responsible for any negligence the driver of the truck may have committed. Furthermore, the evidence was in sharp conflict as to the speed of the truck and the speed of the trolley car on approaching the crossing, and as to whether the latter was moving or standing still when the wreck occurred, and as to whether the driver of the trolley car exercised proper care in the situation presented. In short, there were questions of negligence and diligence that could have been solved only by the jury. It follows that this court can not say that there was no evidence to support the verdict; and that a verdict for the defendant was demanded as a matter of law. On the contrary, there was some evidence to authorize the verdict. We hold that no cause for reversing the judgment is shown by either the general grounds or the first special ground of the motion for new trial. The cases cited by the plaintiff in error in support of these grounds of its motion present instances where the plaintiff went blindly into a place of evident danger, and

a careful consideration of such cases as *Peeples* v. *Louisville & Nashville R. Co.,* 37 *Ga. App.* 87 (139 S. E. 85); *Cox* v. *Central of Ga. Ry. Co.,* 38 *Ga. App.* 88 (143 S. E. 444); *Coleman* v. *Western & Atlantic Railroad,* 48 *Ga. App.* 343 (172 S. E. 577); *Pollard* v. *Gorman,* 52 *Ga. App.* 127 (182 S. E. 678); *Atlanta Ry. Co.* v. *Owens,* 119 *Ga.* 833 (47 S. E. 213); *Harris* v. *Southern Ry. Co.,* 129 *Ga.* 388 (58 S. E. 873); *Reid* v. *Southern Ry. Co.,* 52 *Ga. App.* 508 (183 S. E. 849); *Powell* v. *Carter,* 59 *Ga. App.* 683 (2 S. E. 2d, 191), and *Hallman* v. *Powell,* 60 *Ga. App.* 339 (4 S. E. 2d, 104), will show that they are not controlling under the facts of the present case, as contended by the plaintiff in error.

2. Special ground 2 alleges error: "Because the court omitted and failed to charge the jury that the operator of the . . truck with which the street car of the defendant collided was under a duty to exercise ordinary care, and that failure to so exercise ordinary care on the part of the operator of the . . truck was negligence." This ground avers that "the omission to make said charge . . was misleading ·and confusing in that the jury in effect is instructed not to consider the duty resting upon the . . truck driver to use ordinary care, but the jury is left to determine only whether or not the defendant was negligent." The parts of the charge bearing upon the question presented by this ground follow: "Gentlemen, I charge you that the defendant in the operation of its street car, was under the legal duty to exercise ordinary care. Now, ordinary care is defined to be just that care which every prudent person would exercise under the same or similar circumstances. An absence of that care may be said to be ordinary neglect. . . If the plaintiff is to recover . . he must recover upon proof of one or more of the allegations of negligence made . . in his petition. Gentlemen, if you find that the defendant was negligent as charged and that such negligence was the proximate cause of the plaintiff's injury, if he sustained injury, then . . the plaintiff would be· entitled to recover in this case. If you conclude that the defendant was not negligent, that would determine your investigation, as in that event the plaintiff could not recover in the case. You will take this definition that I have given you; that is, of ordinary care, as being just that care which every prudent person would exercise under the same or similar circumstances, and apply it to the evidence

in the case—all the evidence in the case—and determine whether or not the defendant was negligent as charged. . . If you believe the defendant was negligent and that such negligence was the proximate cause of the injuries complained of, the plaintiff would be entitled to recover. If you believe that the operator of the . . truck . . was negligent, and that the negligence of the driver of the truck was, in and of itself, the sole cause of the injury complained of, then and in that event the defendant . . would not be liable, and the plaintiff could not recover. If you believe the operator of the street car and the operator of the truck were both negligent, and that their separate acts of negligence, if any, combined naturally and directly to produce and thus constitute the proximate cause of the injuries complained of, then and in that event you would be authorized to find for the plaintiff and against the defendant. So, gentlemen, you have for consideration, as I have already indicated, the question of whether or not the defendant was negligent. If you find that it was, and that as a result of such negligence the plaintiff was injured, then and in that event the plaintiff would be entitled to recover. If, upon consideration of the evidence, and, considering the question of negligence or no negligence, you conclude that the defendant was not negligent, then and in that event the plaintiff would not be entitled to recover." The court charged the jury that if they believed the driver of the truck was negligent and that his negligence was the sole cause of the injury complained of, then the defendant would not be liable and the plaintiff could not recover. The charge of the court as a whole was full and fair, and we do not think that the jury was in the least confused or misled by it. No error is shown by special ground 2 of the motion.

3. Error is assigned in special ground 3: "Because the court omitted to charge that the plaintiff could not recover against the defendant even though the defendant should be negligent, if the sole proximate cause of the injury was the negligence of the operator of the automobile truck, and said omission was not covered by any other principle of law contained in the charge." This ground of the motion is without merit, as the judge charged the jury that the plaintiff could not recover, if the negligence of the driver of the automobile truck was the sole proximate cause of the injury complained of.

4. Grounds 4, 5, and 6 of the motion are grouped together by counsel for the plaintiff in error in their brief and argument. These grounds raise substantially the same question with reference to the charge of the court as that presented by special ground 2 of the motion, and no harmful error is shown by any of them. It is not deemed necessary to elaborate further in ruling on these grounds of the motion.

5. Special ground 7 complains that the court erred in charging the jury: "If, upon consideration of the evidence and considering the question of negligence or no negligence, you conclude that the defendant was not negligent, then in that event the plaintiff would not be entitled to recover in the case." This charge was a correct statement, and certainly not harmful to the plaintiff in error (the defendant in the suit), as it instructed the jury that the plaintiff would not be entitled to recover if they found or concluded that the defendant was not negligent. This ground of the motion shows no error.

6. The court did not err in overruling the defendant's motion for a new trial. *Judgment affirmed. Parker, J., concurs.*

FELTON, J., dissenting. One question for determination by the jury was whether the injuries were proximately caused by the negligence of the defendant or the negligence of the driver of the truck. Under the evidence, if the injuries were caused solely by the negligence of the driver of the truck the defendant would not be liable even if it was negligent, if its negligence did not contribute to or cause the injuries. Therefore I think it was error for the court to fail to charge the jury this principle, and also to charge as follows: "So, gentlemen, you have for consideration as I have indicated already, the question of whether or not the defendant was negligent," and, "If, upon consideration of the evidence and considering the question of negligence or no negligence, you conclude that the defendant was not negligent, then in that event the plaintiff would not be entitled to recover in the case." These charges, and the failure to charge as above stated, made the charge contradictory, and tended to confuse the jury and to authorize them to find for the plaintiff if the defendant was negligent, even though the injuries were caused solely by the negligence of the driver of the truck. *Georgia Ry. & Power Co.* v. *Bryans,* 35 *Ga. App.* 713 (134 S. E. 787). See also in this connection, *Brooks* v. *Carver,*

55 *Ga. App.* 362 (190 S. E. 389); *Southern Ry. Co.* v. *Blanton,* 59 *Ga. App.* 252 (200 S. E. 471); *Scott* v. *Torrance,* 69 *Ga. App.* 324 (25 S. E. 2d, 120). I think the errors require a new trial.